## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES FUESTON, | Case No. 2:05 cv 0134 DB |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | Judge Dee Benson |
| MICHAEL J. ASTURE, in his capacity as Commissioner of the Social Security Administration, | Magistrate Judge Brooke C. Wells |
| Defendant. | |

Plaintiff James Fueston seeks judicial review under 42 U.S.C. § 405(g) of the final decision by the Commissioner of the Social Security Administration (SSA) who denied his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).[1] Fueston contends he is disabled and does not retain the residual functional capacity to engage in employment. According to Fueston, the Administrative Law Judge (ALJ) made multiple errors that warrant a finding by this Court that he is disabled as a matter of law with an order awarding him benefits, or in the alternative, a remand back to the SSA for further proceedings. In

---

[1] *See* 42 U.S.C. §§ 401-33, 1381-1383f. Judge Dee Benson referred this case pursuant to 28 U.S.C. § 636(b)(1)(B) to the Court for consideration.

opposition to Fueston's contentions are those arguments made by the Commissioner in support of Defendant's motion to affirm the Commissioner's decision.[2]

The ALJ concluded Fueston was able to perform a "wide range of medium unskilled work"[3] in significant numbers in the national economy and therefore was not disabled. The Court must determine whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards.[4] The Court finds the ALJ erred at step two of the required five-step evaluation process and therefore recommends this case be remanded.

## **BACKGROUND**

A.    **Procedural Background**

In 1993, Fueston was found disabled based on alcoholism and awarded benefits.[5] In 1996, however, congress amended the Social Security Act to eliminate drug addiction and alcoholism as a basis for disability.[6] The statue provides:

> An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.[7]

---

[2] Docket no. 25.
[3] Rec. p. 31. Record refers to the administrative record of the proceedings in this case that is on file with the Court. *See* docket no. 5.
[4] *See Clifton v. Charter*, 79 F.3d 1007, 1009 (10th Cir. 1996).
[5] Rec. 139.
[6] *See* The Contract with America Advancement Act, Public Law 104-121, 110 Stat. 847 (1996), 42 U.S.C. §§ 423(d)(2)(C), 1382(a)(3)(J). This was incorporated into the Commissioner's regulations at 20 C.F.R. §§ 404.1535 and 416.935.
[7] 42 U.S.C. §§ 423(d)(2)(C),

Thus, Claimant's entitlement to benefits ceased in January 1997.[8]  In February 1997, Claimant

reapplied for DIB and SSI alleging disability due to bad hands, legs, and a smashed head.[9]  On

December 10, 1998, an ALJ denied Fueston's claims finding he could perform a limited range of

light work.[10]

In June of 2002, the Appeals Council granted Claimant's request for review, vacated the

ALJ's decision and remanded the case for further proceedings.  The Appeals Council determined

the ALJ erred in rendering the 1998 decision, the Council stated:

> the adjudicator must first evaluate the claim in accordance with the sequential evaluation
> process, considering all of the combined impairments of an individual including any
> alcoholism/drug abuse.  If it is determined that the individual is disabled, a separate
> decision is then made to determine whether the individual's use of drugs and alcohol is a
> contributing factor material to the finding of disability; i.e., whether the individual would
> be disabled if he stopped using drugs or alcohol.[11]

Following remand, a different ALJ held a hearing on June 17, 2003.[12]  On September 10,

2003, the ALJ denied Fueston's claims finding he could perform a "wide range of medium

unskilled work."[13]  The Appeals Council denied Claimant's subsequent request for review

making the ALJ's decision final for purposes of judicial review.[14]  Fueston then filed a

---

[8] Rec. 139, 244.
[9] Rec. 99-106.  Although not listed on his formal application, Claimant also alleged at a later date that he could not
work because of problems with grasping, his vision and headaches.  Rec. 233.  On page 233 of the record is a report
from a medical consultative exam addressing these alleged disabilities.
[10] Rec. 244-51.
[11] Rec. 262.
[12] Rec. 370-435.
[13] Rec. 31.
[14] Rec. 4-6; *see* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 416.1481 (2006).

complaint in this Court alleging that the Commissioner's decision is contrary to law, filled with errors and not supported by substantial evidence.

In March of 2007, Claimant brought a motion to supplement the record that the Court granted.[15]  The supplement is a notice of award from the Social Security Administration dated January 19, 2007.  The award states that the SSA finds Claimant is disabled as of July 2004 and eligible for SSI beginning July 23, 2004.  Each party addressed the impact of this notice of award on the instant case.[16]

**B.    <u>Factual Background</u>**

At the time of the ALJ's decision, Fueston was 50 years old.  He is a high school graduate with one year of college education and had worked as a carpenter, cook, cook's helper, and dishwasher.[17]  As outlined by the parties Claimant has an extensive medical history.  Due to the error found at step two, the Court does not go into great detail regarding Claimant's medical history but does note the following which is relevant to this Court's analysis:

In May 1994, while severely intoxicated, Claimant fell down a flight of stairs and injured his head.  Claimant remained in bed for a couple of days until some friends took him to the emergency room.  On May 18, 1994, Fueston was admitted to LDS Hopsital where he was diagnosed with an intracerebral hemorage of the left temporal lobe.[18]  A CT scan reveled a hematoma.  Fueston could not repeat words or "construct a well meaning sentence in response to

---

[15] Docket no. 30.
[16] Docket nos. 33 and 334.
[17] Rec. 26.
[18] Rec. 276.

the speech aimed at him."[19]  After mild to moderate improvement, Claimant was transferred to the rehabilitation unit on May 25, 1994.

Upon admission to the rehabilitation unit Claimant had "unintelligible speech" and required assistance for all activities.[20]  Claimant's condition, however, improved quite drastically.  By the date of his discharge in June 1994, Claimant was independent, could walk on all terrains including stairs, had no medical problems, had intelligible verbal and written communications, was able to follow "three step commands" and his short term memory appeared to be improving rapidly.[21]

On February 18, 1997, Dr. Keith M. Pearson, M.D., examined Claimant.  Dr. Pearson noted Fueston has difficulty with writing, appeared to be mentally slow, and has some neurological deficits with the possibility of early multiple sclerosis or "some other type of demyelating disease."[22]  Dr. Pearson opined that Claimant's condition was permanent and resulted in limitations involving activities such as part-time work, skill training or basic education.

In April 1997 consultative examiner, Gary McFadden M.D., examined Fueston. Claimant's chief complaint was that he had trouble writing, his legs did not work, and dizziness.[23]  In the report Dr. McFadden noted an exam previously done in August 1996 by a

---

[19] Rec. 276.
[20] Rec. 280.
[21] Rec. 280.
[22] Rec. 210.
[23] Rec. 211.

neurologist, Dr. Thomas Houts.  Dr. Houts concluded Claimant "had typical midline cerebellar dysfunction which is most commonly from the chronic toxicity of alcohol."[24]  After reviewing Dr. Houts' conclusions, Dr. McFadden opined that Claimant had midline cerebellar degeneration secondary to alcohol overuse.  Dr. McFadden concluded Fuestion was capable of sitting and standing, carrying 10-20 pounds on a limited basis, handling objects, but had some difficulty doing fine work and writing.  During the examination Claimant admitted to drinking three to four times a month and Dr. McFadden warned Claimant that continued use of alcohol would worsen his imbalance.

On May 1, 1997, a State agency physician evaluated Claimant and determined that he did not meet a listing under either 12.02 Organic Mental Disorders or 12.09 Substance Addiction Disorders.[25]  The physician reported that Claimant had marked limitations in his ability to understand, remember, and carry out detailed instructions, but did not have any significant limitations or moderate limitations in other areas and "mentally he could do simple work."[26]

The following day, Robert D. Matheson, M.D., did a physical residual functional capacity assessment of Claimant.  Dr. Matheson concluded that despite Claimant's history of alcohol abuse and some restrictions, such as not exposing Claimant to heights and certain hazards due to balance and gait problems, Claimant could perform medium work.[27]

---

[24] Rec. 211.
[25] As noted in the Social Security regulations, if a claimant has an impairment which meets a listed impairment then they are considered disabled.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525(a), 416.920(d) (2006).
[26] Rec. 159.
[27] Rec. 142.

In February 2003, Liz McGill, Ph.D. examined Claimant.  Claimant denied problems with alcohol but acknowledged several arrests for public intoxication.[28]  Dr. McGill noted that Claimant "has no insight into his significant substance abuse and the effect on his life."[29]  Dr. McGill diagnosed Claimant with alcohol dependence continuous, cognitive disorder NOS (related to alcoholism), personality disorder NOS, mixed (schizoid and antisocial), alcoholism and a GAF[30] score of 55.[31]

In regard to Claimant's mental abilities to perform work Dr. McGill noted that Claimant had slight limitations in understanding, remembering and carrying out simple instructions; moderate limitations in making judgments, interacting appropriately with the public, supervisors and co-workers, and responding properly to changes in the workplace; moderate-to-marked limitations in responding appropriately to work pressures; and marked limitations in understanding, remembering and carrying out detailed instructions.[32]

At the request of the state of Utah's Department of Social and Health Services, James C. Ottowicz, M.D. a neurologist, performed a disability determination of Claimant on February 19,

---

[28] Rec. 284.

[29] Tr. 285.

[30] The GAF, or Global Assessment of Functioning Scale, considers an individual's "psychological, social and occupational functioning on a hypothetical continuum of mental health-illness."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed. 2000).  It is often used by doctors to assess an individuals ability to deal with life's problems and activities.

[31] A GAF score of 55 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning, (e.g., few friends, conflicts with peers or co-workers)." *Id.*

[32] Rec. 288-89.

2003.[33]  Fueston reported his main problem as balance and that he spent most of his money on drugs and alcohol.  Dr. Ottowicz reported that Claimant had no difficulty changing positions or performing ranges of motion, but he "is very slow in his responses and a poor historian."[34]  Dr. Ottowicz found Fueston had normal speech, memory and concentration; full strength in all muscle groups; normal coordination in all limbs; no evidence of atrophy; and normal fine motor movements.  Fueston did have "severe ataxia on finger to nose bilaterally"[35] and a positive Romberg Test.[36]  Dr. Ottowicz also reported that Claimant had an abnormal gait and "walks very slow on a wide spaced base."[37]

In regard to work related activities Dr. Ottowicz reported that Fueston could lift 50 pounds occasionally and 20 pounds frequently with no impact on his ability to sit.  Claimant had "permanent ataxia/balance problems"[38] that would impact his ability to walk, push and pull, and not permit him to work in construction.  In summary, however, Dr. Ottowicz wrote: "His condition is stable and his condition will remain as such but he will progress as time goes on."[39]

Finally, in regard to Claimant's medical background, from July 1998 to July 2006, Claimant also received intermittent medical care at the Wasatch Homeless Health Care

---

[33] Rec. 290.
[34] Rec. 291-92.
[35] Rec. 292.
[36] The Romberg Test is a test of proprioception.  It is performed with feet approximated.  The subject stands with eyes open and then closed, if closing the eyes increases unsteadiness then it indicates a loss of proprioceptive control and the test is positive.  *See Stedman's Medical Dictionary*, 1640 (27th ed. 2000).
[37] Rec. 292.
[38] Rec. 295.
[39] Rec. 293.

Program.[40]  Claimant's condition varied over time.  A nurse practitioner who saw Claimant in June 2000 found he had intact cognitive function, normal strength and coordination in the upper body with markedly impaired balance and a wide-based gait.[41]  In 2003, Claimant complained of diplopia (double vision) and an ophthalmology exam was scheduled.  Notably in July 2004, Dr. Smith, a neurologist who examined Claimant at the clinic, stated "I don't think he is employable."[42]  Dr. Smith's findings included diffuse psychomotor slowing, possibly related to a history of alcohol abuse and likely worsened by the brain trauma, low judgment, ataxia, and memory problems.

## **STANDARD OF REVIEW**

When reviewing the Commissioner's decision, the Court may consider only whether substantial evidence supports the decision and whether the Commissioner applied the correct legal standards.[43]  "Substantial evidence is more than a scintilla; it is such relevant evidence as a reasonable mind might deem adequate to support a conclusion."[44]  Importantly, when evaluating the evidence, "'the court may neither reweigh the evidence or try the issues de novo or substitute its judgment for that of the Secretary.'"[45]  Where evidence as a whole can support either the

---

[40] Rec. 306-37.
[41] Rec. 323.
[42] Rec. 306.
[43] See *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) ("We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).
[44] *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987).
[45] *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989)).

agency's decision or an award of benefits, the agency's decision must be affirmed.[46]  But, the standard demands that this Court "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."[47]  And, the Tenth Circuit requires the ALJ to "'discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.'"[48]

## ANALYSIS

The Secretary has established a five-step sequential evaluation process for determining whether an applicant is disabled.[49]  As explained by the Tenth Circuit in *Fischer-Ross v. Barnhart*,[50]

> Step one requires a claimant to establish [he] is not engaged in substantial gainful activity.  Step two requires the claimant to establish [he] has a medically severe impairment or combination of impairments.  Step three asks whether any medically severe impairment, alone or in combination with other impairments, is equivalent to any of a number of listed impairments so severe as to preclude substantial gainful employment.  If listed, the impairment is conclusively presumed disabling.  If unlisted, the claimant must establish at step four that [his] impairment prevents [him] from performing work [he] had previously performed.  If the claimant is not considered disabled at step three, but has satisfied [his] burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of [his] age, education, and work experience.[51]

---

[46] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).
[47] *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).
[48] *Id.* at 1262 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)).
[49] *See* 20 C.F.R. § 404.1520.
[50] 431 F.3d 729 (10th Cir. 2005).
[51] *Id.* at 731 (citations and quotations omitted).

Here, the ALJ found at step one that Fueston had not engaged in substantial gainful activity since his alleged disability onset date.[52]   At step two, the ALJ determined from his review of the evidence, that Fueston had the severe impairments of alcohol abuse and cerebral degeneration due to alcohol abuse.[53]   During the hearing, the ALJ also heard testimony from Dr. Keith Pearson M.D. who had previously examined Fueston.  Dr. Pearson testified that Claimant had the severe impairments of alcoholism, poly drug abuse, cerebellar dysfunction, organic mental disease, depression, personality disorder, and high blood pressure.  At step three, the ALJ agreed with the conclusions of Dr. Pearson and found that Claimant did not meet or equal any listed impairment.[54]   At step four, the ALJ found that Fueston could not return to his past work. Based upon the medical evidence and the testimony of a vocational expert, the ALJ then determined Fueston has the RFC to perform a wide range of medium unskilled work.[55]   Finally, the ALJ found Fueston could perform jobs that exist in significant numbers in the national economy.[56]   Therefore, Claimant was "not under a disability as defined in the Social Security Act."[57]   Claimant alleges multiple errors in the ALJ's decision.

Fueston argues this case should be reversed or remanded because the ALJ: (1) failed to identify all of Fueston's severe impairments at step two; (2) erred by failing to explain why he determined Fueston's severe impairments do not meet or equal a listed impairment; (3) erred in

---

[52] Rec. 26.
[53] Rec. 27.
[54] Rec. 28.
[55] Rec. 31.
[56] Rec. 31.
[57] Rec. 31; *See* 20 CFR § 404.1520(f).

not finding that Fueston meets both listing 12.02 and 11.17; (4) erred by improperly finding

Fueston's alcoholism material before concluding the five-step evaluation process; (5) erred by

improperly commenting on the law and evidence during the hearing which denied Fueston's

constitutional right of due process; (6) erred in determining Fueston's RFC; and (7) erred at step

five because the requirements of the jobs identified by the ALJ exceed Fueston's true RFC.

A.  Step Two

At step two of the five-step sequential process, the Commissioner determines whether the

claimant has a medically severe impairment or combination of impairments.[58]  An impairment or

combination of impairments is severe if the conditions "significantly limit [one's] physical or

mental ability to do basic work activities."[59]

Claimant argues the ALJ erred at step two when he failed to identify all of Claimant's

severe impairments.  Specifically, the ALJ failed to identify as severe Fueston's "organic brain

disorder (due to the 1994 head injury), personality disorder, high blood pressure, and diplopia

(double vision)."[60]  In support of his argument Claimant cites to a decision from the Ninth

Circuit, *Ingram v. Barnhart*.[61]  In *Ingram*, the court determined that the "Commissioner applied

the wrong legal standards for identifying [the claimant's] severe impairments."[62]  The court went

on to note that "[i]n drug and alcohol addiction cases, the question is whether the claimant would

---

[58] *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); 20 C.F.R. § 404.1520(a)(iii) (2008).

[59] 20 C.F.R. § 416.921(a).

[60] Pla. rep. p. 2.

[61] 72 Fed.Appx. 631, 635 (9th Cir. 2003).

[62] *Id.*

be still disabled if not dependent on drugs or alcohol.  Thus, each and every impairment must be considered to determine if the combination of the remaining impairments is severe."[63]  The Court does not fully agree with Claimant's arguments made in reliance on *Ingram* because the case relied upon by the *Ingram* court, *Smolen v. Chater*,[64] does not deal with drug or alcohol addiction like that in the instant case.  But, the Court does agree that the ALJ was required to consider Dr. Pearson's opinions concerning Fueston's severe impairments.

Here, the ALJ identified Fueston's severe impairments as "alcohol abuse and dependence, and cerebral degeneration due to alcohol abuse."[65]  At the hearing Dr. Pearson, who treated Claimant, testified that Claimant has the severe impairments of "alcoholism, poly drug abuse, cerebellar dysfunction, organic mental disease, depression, personality disorder, and high blood pressure."[66]  Dr. Pearson then went on to testify that Claimant's condition did not meet the requirements of listings 11.17a, 1.03, 1.08, 12.02 or 12.08.  The ALJ agreed with Dr. Pearson's assessment concerning the listings.  But, the ALJ failed to address Dr. Pearson's testimony concerning the severe impairments.  Because the ALJ did not properly discuss the weight given to Dr. Pearson's opinions-who at a minimum is a treating source from Claimant's past-the Court cannot determine if the ALJ applied the correct legal standards or if his decision accords with the substantial evidence.  Additionally, there is evidence in the record that could support Dr. Pearson's opinions regarding Claimant's severe impairments which the ALJ failed to discuss.

---

[63] *Id.* (citing to *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).
[64] 80 F.3d 1273.
[65] Rec. 27.
[66] Rec. 28.

The Tenth Circuit has explained that the ALJ must "'make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight.'"[67]  Here, the ALJ failed to provide an adequate explanation.[68]

Recently, the Tenth Circuit explained that an ALJ's "failure to find that additional alleged impairments are also severe is not in itself cause for reversal."[69]  But, for this "harmless error" doctrine to apply, the ALJ must "consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"[70]  Here, the Court finds the ALJ did not adequately discuss all of Fueston's impairments at other steps in his decision, so the harmless error doctrine does not apply.[71]  On remand, the ALJ is instructed to review the record and include at step two, all "severe" impairments that are documented by the medical record and an explanation for the reviewing court why certain evidence-such as the testimony by Dr. Pearson-is rejected.

In similar fashion, the Court finds the ALJ also failed to clearly discuss the impact of Claimant's alcoholism on his alleged disabilities.  "Under the regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped

---

[67] *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

[68] *See Clifton v. Chater*, 79 F.3d at 1010 ("the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

[69] *Hill v. Astrue*, 2008 WL 3339174 *2 (10th Cir. August 12, 2008).

[70] *Id.*

[71] *See v. Astrue*, 537 F.3d 1264 (10th Cir. 2008) (determining that the harmless error doctrine does not apply because of the ALJ's failure to adequately discuss the evidence in claimant's favor).

14

using drugs or alcohol."[72]  Thus, as explained by the Tenth Circuit "the ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether any or all of plaintiff's remaining limitations would be disabling."[73]  In essence this is a two-step analysis that the ALJ must conduct.

Claimant argues the ALJ erred in this two-step analysis by improperly finding Fueston's alcoholism material to his disability before concluding the five-step evaluation process.[74]  "The Commissioner concedes that the ALJ's explanation of this two-step analysis [as required in substance abuse cases] could have been more thorough."[75]  But, according to the Commissioner, a deficiency in decision writing is not an appropriate basis for remand.  While this argument has some support in case law,[76] the Court finds that this case does not involve such a harmless error because of errors made elsewhere in the ALJ's decision.  Thus, upon remand the ALJ is instructed to provide a much clearer analysis concerning this two-step test concerning Fueston's alcoholism.

In light of the errors found by this Court in the ALJ's decision, the Court finds it unnecessary to address Claimant's remaining arguments.

---

[72] *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).
[73] *Id.*
[74] Pla. rep. p. 4.
[75] Mtn to affirm p. 14.
[76] *Hill v. Astrue*, 2008 WL 3339174 *2 (10th Cir. August 12, 2008).

Finally, though the age of this case does add some merit to Claimant's request that this Court award him benefits, the Court finds the lengthy medical history and complexity of dealing with substance abuse, warrants a remand instead of an outright award of benefits.

## CONCLUSION

Based on the foregoing, the Court recommends that this case be remanded to the ALJ for additional proceedings and the Commissioner's motion to affirm be denied.

The Court notifies the parties of their right to object to the foregoing Report and Recommendation.  Parties must file any objections within 10 days of receiving the Report and Recommendation.  Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 18th day of November, 2008.

Brooke C. Wells
United States Magistrate Judge